UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

JAMES RHEE,                                          :

                Plaintiff,                         :

                                :          12-cv-8508 (NSR)

   -against-                                       :

                                :       OPINION & ORDER

GOOD SAMARITAN HOSPITAL; KEITH            :
CARTMILL, M.D., personally; SCOTT
MANKOWITZ, M.D., personally; JANE DOES #s :
1 and 2, personally; SUMMIT PARK HOSPITAL; :
VAHAN KOUYOUMDJIAN, M.D., personally;    :
LARA R. GATES, personally; YOUNG YOON,   :
M.D., personally;                                   :

                                :

              Defendants.                    :

                                :
------------------------------------------------------------- X

NELSON S. ROMÁN, United States District Judge

      Plaintiff James Rhee brings this action *pro se* and *in forma pauperis* for alleged civil

rights violations arising from his involuntary commitment at Summit Park Hospital in August

2011. Defendants Summit Park Hospital, Vahan Kouyoumdjian, M.D., Lara R. Gates, and

Young Yoon, M.D. (collectively, the "Rockland County Defendants"), Good Samaritan Hospital

and Jane Does 1 and 2 (collectively, the "Good Samaritan Defendants"), Keith Cartmill, M.D.,

and Scott Mankowitz, M.D. move for judgment on the pleadings pursuant to Fed. R. Civ. P.

12(c).

## PLAINTIFF'S FAILURE TO OPPOSE THE INSTANT MOTIONS

      "[F]ailure to oppose a 12(b)(6) [or 12(c)] motion cannot itself justify dismissal of a

complaint." *Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (citing *McCall

v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000)). Where a Rule 12(c) motion is unopposed, "the

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3 30 2015

Copies mailed/faxed 3|30|2015 (sp)

Chambers of Nelson S. Román, U.S.D.J.

sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *Id.* at 322-23.

As of the date of this Order, Plaintiff has not submitted opposition to any of Defendants' motions.  The Court granted Plaintiff four extensions giving him a total of 196 days to do so. (*See* ECF Nos. 39, 65-66, 73-74, 82.)  In granting the last of those extensions, the Court noted: "No further extensions will be granted.  If the Court does not receive Plaintiff's opposition to Defendants' motions to dismiss by January 5, 2015, it will issue a decision accordingly."  (ECF No. 82.)  Because Plaintiff has had more than ample opportunity to respond, has been warned of the consequences of his failure to do so, and has been granted several lengthy extensions, the Court will decide the motions on Defendants' submissions alone, in light of the Court's "reading of the pleading and knowledge of the law."  *Hass*, 497 F. Supp. 2d at 564.

## BACKGROUND

The instant Complaint arises from Plaintiff's involuntary commitment at Summit Park Hospital under N.Y. Mental Hygiene Law ("MHL") § 9.27.  MHL § 9.27 permits involuntary commitment, based on the signed certificates of two examining physicians, of a person who "has a mental illness for which care and treatment as a patient in a hospital is essential to such person's welfare and whose judgment is so impaired that he is unable to understand the need for such care and treatment" if "as a result of his/her mental illness, this person poses a substantial threat of harm to self or others."  N.Y. Mental Hygiene Law §§ 9.01, 9.27; *Antwi v. Montefiore Med. Ctr.*, No. 14 CIV. 840 ER, 2014 WL 6481996, at *7 (S.D.N.Y. Nov. 18, 2014).

On August 3, 2011, after Plaintiff's mother called the police to complain that Plaintiff "threatened to kill her," was "bipolar," and "wasn't taking his prescribed medication," the police took Plaintiff to Good Samaritan Hospital, a private facility.  (Compl. 4-5.)  Dr. Cartmill

allegedly examined Plaintiff for "less than a minute," determined that he "did not hurt anyone and does not contemplate hurting anyone," and concluded that his condition was "mild and brought on by stress." (*Id.* at 5.)  Nevertheless, Dr. Cartmill signed a certificate for Plaintiff's involuntary commitment under MHL § 9.27.  (*Id.*)  Dr. Cartmill's certificate was allegedly based wholly on Plaintiff's prior diagnosis of bipolar disorder, despite the fact that Dr. Cartmill allegedly knew or should have known, based on Plaintiff's medical records, that Plaintiff's condition did not require medication.  (*Id.* at 2, 5.)  Dr. Mankowitz allegedly signed a second certificate for Plaintiff's involuntary commitment under MHL § 9.27 despite never having examined Plaintiff in person.  (*Id.* at 5.)  His certificate was allegedly based on an examination performed by Jane Doe 2, a social worker employed by Good Samaritan Hospital, who relied on Plaintiff's mother's statements.  (*Id.*)

Plaintiff was then transferred and admitted to Summit Park Hospital, which is owned by Rockland County.  (*Id.* at 3, 5.)  Defendant Lara Gates, a nurse practitioner employed by Summit Park Hospital, performed another psychiatric evaluation.  (*Id.* at 5.)  Plaintiff alleges that a guard named Frank asked Defendant Dr. Kouyoumdjian what was happening with Plaintiff's case.  (*Id.* at 6.)  Dr. Kouyoumdjian allegedly told Frank that Plaintiff had been committed pursuant to two physicians' certificates and would be kept for evaluation.  (*Id.*)

Plaintiff further alleges that (1) his blood was drawn by unidentified Good Samaritan Hospital employees against his will (*id.* at 9); (2) he was forced to take medication while at Summit Park Hospital (*id.* at 6); and (3) that he advised Dr. Yoon that he had an ulcer and was experiencing rectal bleeding but was ignored (*id.*).

Plaintiff alleges that this course of conduct amounts to a cause of action under 42 U.S.C. § 1983 (*id.* at 7), discrimination under Rehabilitation Act § 504 (*id.* at 7-8), medical malpractice,

kidnaping, and battery (*id.* at 8-9).

## STANDARD OF REVIEW

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).  A Rule 12(c) motion may be granted only if the material facts are undisputed and the movant establishes an entitlement to judgment on the pleadings as a matter of law.  *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am.*, 47 F.3d 14, 16 (2d Cir. 1995); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).  To survive a Rule 12(c) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In applying this standard, a court should accept as true all well-pleaded factual allegations, but should not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*  A court should give "no effect to legal conclusions couched as factual allegations." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

*Pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  They are construed "liberally" and interpreted "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  However, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and

substantive law." *Boddie v. N.Y. State Div. of Parole*, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (quoting *Traguth v. Zuch*, 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

## I.   DISABILITY DISCRIMINATION CLAIMS

Plaintiff's disability discrimination claims must be dismissed.  "[S]ection 504 prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to, and thus improper to consideration of, the services in question."  *United States v. Univ. Hosp.*, 729 F.2d 144, 156 (2d Cir. 1984); *see also McGugan v. Aldana-Bernier*, 752 F.3d 224, 234 (2d Cir. 2014).

Plaintiff's sole theory of discrimination is that Defendants committed Plaintiff because they assumed based on Plaintiff's prior diagnosis of mental illness that he was violent.  "[A]n accusation that an individual was involuntarily committed on the basis of a mental disability cannot serve as a basis for an ADA or Rehabilitation Act violation for disability discrimination because such a finding would convert every involuntary commitment transport into a civil rights violation."  *Bryant v. Steele*, 25 F. Supp. 3d 233, 242 (E.D.N.Y. 2014) (alterations and internal quotation marks omitted); *see also McGugan*, 752 F.3d at 234 ("If [Defendant's] decision was based on stereotyping, it was based on stereotyping of conditions that were appropriate to consider in making the ultimate determination to hospitalize. Accordingly, . . . [Plaintiff] has not alleged actionable discrimination under § 504 of the Rehabilitation Act.").  Plaintiff has not plausibly alleged that his commitment was based on considerations that are "discriminatory" in the pejorative sense.  *See McGugan*, 752 F.3d at 232.  Accordingly, Plaintiff's discrimination claims are dismissed.

## II.   STATE-LAW CLAIMS

Plaintiff asserts state-law claims sounding in intentional tort and medical malpractice.

5

The disposition of these claims differs by party.

      A.      <u>Summit Park Hospital</u>

The intentional tort and medical malpractice claims asserted against Summit Park Hospital must be dismissed for failure to comply with applicable notice-of-claim requirements. State-law claims brought in federal court are subject to state procedural rules. *See, e.g.*, *Felder v. Casey*, 487 U.S. 131, 141 (1988). Thus, N.Y. County Law § 52, which incorporates the notice-of-claim requirements in N.Y. General Municipal Law § 50-e, applies in this case. General Municipal Law § 50-e requires service of a notice of claim within 90 days after a claim arises "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation." N.Y. Gen. Mun. Law § 50-e(1). Notice-of-claim requirements are "strict[]." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999). Failure to comply warrants dismissal. *Id.*

Plaintiff's state-law claims accrued in early August 2011. *See* N.Y. Ct. Cl. Act §§ 10(3), 10(3-b). Plaintiff's notice of claim is dated August 23, 2012 (*see* Weissman Decl. Ex. C, ECF No. 43-3), long after the 90-day time limit had expired. Plaintiff did not petition to file a late notice of claim and the time to do so has also expired. *See In re Dayton*, 786 F. Supp. 2d 809, 824-25 (S.D.N.Y. 2011) (holding that in no event may the court extend the time to file a notice of claim beyond the one year and ninety day statute of limitations); *Hewitt v. County of Rensselaer*, 775 N.Y.S.2d 112, 114 (App. Div. 2004) (same). Accordingly, the state-law claims asserted against Summit Park Hospital are dismissed.

      B.      <u>Ms. Gates, Dr. Yoon, and Dr. Kouyoumdjian</u>

Notice-of-claim requirements apply with equal force to any municipal employees who are required to be indemnified by the municipality. N.Y. Gen. Mun. Law § 50-e(1)(b).

Rockland County is required to indemnify its employees for acts or omissions that "occurred while the employee was acting in good faith and within the scope of his or her public employment or duties."  Rockland Cnty. Code § 45-3(A).  Plaintiff's allegations make clear that Ms. Gates, Dr. Yoon, and Dr. Kouyoumdjian were acting within the scope of their employment throughout the events in question.  Therefore, Plaintiff is barred from asserting his state-law claims against Summit Park Hospital and its employees, Ms. Gates, Dr. Yoon, and Dr. Kouyoumdjian.

C.      The Good Samaritan Defendants, Dr. Cartmill, and Dr. Mankowitz

The notice-of-claim requirements do not apply to the Good Samaritan Defendants, Dr. Cartmill, or Dr. Mankowitz.  Instead, the usual timeliness principles apply.  The New York limitations period for intentional torts such as false imprisonment, kidnaping,[1] and battery is one year.  N.Y. C.P.L.R. 215(3); *see Garcia v. NYPD Pct. 41*, No. 95 CIV. 10471 (LAP), 1997 WL 563809, at *4 (S.D.N.Y. Sept. 10, 1997) ("[CPLR] 215(3) has been interpreted as governing all state law claims for intentional torts . . . .  Thus, plaintiff's claims for false arrest and kidnapping are also time-barred." (citations omitted)).  The New York limitations period for medical malpractice is two years and six months.  N.Y. C.P.L.R. 214-a.  Plaintiff filed his Complaint on November 19, 2012, approximately one year and two months after the events in question. Accordingly, any claims sounding in false imprisonment, kidnaping, or battery that Plaintiff might purport to bring are untimely and must be dismissed; however, the medical malpractice claim is timely with respect to the Good Samaritan Defendants, Dr. Mankowitz, and Dr. Cartmill.  No other basis for dismissal is offered as to these defendants.[2]  Accordingly, that claim

---

[1] Plaintiff styles his claim as one of "kidnapping," but the same principles apply if the Court were to view his claim as one of false imprisonment.

[2] Counsel for Dr. Mankowitz and Dr. Cartmill, Terrence E. Dempsey, is warned not to assert defenses in this Court that would warrant Rule 11 sanctions, such as his argument that *pro se* Plaintiff's medical malpractice claims should

survives.

## III.    CLAIMS UNDER 42 U.S.C. § 1983

Plaintiff asserts various constitutional claims under 42 U.S.C. § 1983.  Section 1983

provides that "[e]very person who, under color of any [state] statute, ordinance, regulation,

custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other

person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit

in equity, or other proper proceeding for redress."  42 U.S.C. § 1983.  Again, the disposition of

these claims differs by party.

### A.    Summit Park Hospital

It has long been established that vicarious liability does not attach to a municipality under

§ 1983 unless the "execution of the government's policy or custom . . . inflicts the injury."

*Monell v. Dep't of Social Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978).  In the context of a

motion for judgment on the pleadings, "a plaintiff must make factual allegations that support a

plausible inference that the constitutional violation took place pursuant either to a formal course

of action officially promulgated by the municipality's governing authority or the act of a person

with policymaking authority for the municipality."  *Missel v. County of Monroe*, 351 F. App'x

543, 545 (2d Cir. 2009).  A court may infer a municipal policy from acts or omissions of the

municipality's policy makers, but in the absence of other evidence, a "single incident of errant

behavior is an insufficient basis for finding that a municipal policy caused plaintiff's injury."

*Sarus v. Rotundo*, 831 F.2d 397, 402-03 (2d Cir. 1987).  The instant Complaint describes one

alleged incident of errant behavior.  It identifies no policy or custom that caused the alleged

---

be dismissed for failure to submit a certificate of merit.  *See* N.Y. C.P.L.R. 3012-a(f) ("The provisions of this section
shall not be applicable to a plaintiff who is not represented by an attorney.").

constitutional deprivations.  Accordingly, the § 1983 claims asserted against Summit Park Hospital must be dismissed.

      B.     <u>Dr. Kouyoumdjian, Ms. Gates, and Dr. Yoon</u>

The § 1983 claims asserted against Dr. Kouyoumdjian must also be dismissed.  "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [§] 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  The Complaint does not allege that Dr. Kouyoumdjian was personally involved in depriving Plaintiff of any constitutional right.  The Complaint makes conclusory allegations that Dr. Kouyoumdjian "authoriz[ed]" or "ordered" Plaintiff's confinement.  At best, these are legal conclusions couched as factual allegations, which the Court may disregard on a Rule 12(c) motion.  *Port Dock*, 507 F.3d at 121.  Dr. Kouyoumdjian's role in Plaintiff's confinement, if any, is completely unclear.  The only well-pleaded factual allegations concerning Dr. Kouyoumdjian suggest that his involvement was limited to informing Plaintiff's guard that Plaintiff had been committed pursuant to two physicians' certificates.  Such conduct does not rise to the level of personal involvement in a constitutional deprivation.

Plaintiff does not appear to assert any § 1983 claim against Ms. Gates or Dr. Yoon.  Either way, the factual allegations do not establish their personal involvement in any purported constitutional deprivation.  Accordingly, to the extent the Complaint might be read to assert such claims, they too must be dismissed.

      C.     <u>The Good Samaritan Defendants, Dr. Cartmill, and Dr. Mankowitz</u>

The Good Samaritan Defendants, Dr. Cartmill, and Dr. Mankowitz do not argue that Plaintiff has failed to allege their personal involvement.  Rather, they argue that Plaintiff has failed to allege that they are state actors.  *See* 42 U.S.C. § 1983; *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974); *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir.

2009).  They further argue that the § 1983 claims fail because Plaintiff suffered no constitutional deprivation.

>    1.    *State Action*

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action."  *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)).  "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action."  *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003).

 "[S]tate action requires *both* an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  The mere fact that a person or entity is formally "private" does not immunize it from § 1983 liability.  *Rendell-Baker v. Kohn*, 457 U.S. 830, 847 (1982) ("Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action." (internal quotation marks omitted)).  "Supreme Court cases on the subject of state action 'have not been a model of consistency,' and we therefore have 'no single test to identify state actions and state actors. Rather, there are a host of factors that can bear on the fairness of an attribution of a challenged action to the State.'"  *Fabrikant*, 691 F.3d at 207.  Three main tests have emerged:

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state (1) when the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant

encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Id.*; *see also Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001);

*Hogan*, 346 F. App'x at 629; *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002);

*Tewksbury v. Dowling*, 169 F. Supp. 2d 103, 108 (E.D.N.Y. 2001). The fundamental question under each test is whether the private entity's challenged actions are "fairly attributable" to the state. *Rendell-Baker*, 457 U.S. at 838.

While it is clear in the Second Circuit that *private* physicians that participate in civil commitment of a patient to a *private* hospital are not engaged in state action under any of the applicable tests, *see McGugan*, 752 F.3d at 230; *Doe v. Rosenberg*, 166 F.3d 507 (2d Cir. 1999), the Second Circuit has never considered a civil commitment involving both public and private actors and facilities.

*Tewksbury* is instructive. *See* 169 F. Supp. 2d at 109. In *Tewksbury*, the plaintiff brought § 1983 claims arising from her involuntary commitment under MHL § 9.37. *Id.* at 105. The plaintiff was initially evaluated at the University Medical Center at SUNY Stony Brook ("Stony Brook"), a state-operated facility. *Id.* at 106. The examining physician concluded that she required hospitalization and signed a certificate pursuant to MHL § 9.37. *Id.* Plaintiff was then transferred from Stony Brook to St. John's Episcopal Hospital ("St. John's"), a private facility. *Id.* at 106-07. Physicians at St. John's admitted the plaintiff and authorized her continued confinement. *Id.* at 110. The court held that the St. John's physicians were state actors, reasoning that they performed no examination of their own prior to admitting the plaintiff, but instead relied on the Stony Brook physician's examination and medical judgment, and could not have committed the plaintiff without the Stony Brook physician's certification under MHL

11

§ 9.37.  *Id.*; *see also Meadows v. City of New York*, No. 10-CV-286 JG LB, 2011 WL 864832, at

*5 (E.D.N.Y. Mar. 11, 2011) ("[A] private hospital that admits an involuntarily committed

person upon her transfer from a state facility is not immune from § 1983 liability as a matter of

law."); *cf. McGugan v. Aldana-Bernier*, No. 11-cv-00342 (TLM), 2012 WL 1514777, at *6

(E.D.N.Y. Apr. 30, 2012) (finding no state action under the close nexus/joint action test because

"the private hospital did not consult or contact state employees regarding the evaluation or

commitment of plaintiff nor did state officials participate in the commitment process in any

way"), *aff'd*, 752 F.3d 224 (2d Cir. 2014).

Second Circuit precedent does not circumscribe this case.  The fact that Plaintiff was

committed to a *state* institution under MHL § 9.27 manifests a level of public and private

entwinement that is both qualitatively and quantitatively greater than was present in either

*Rosenberg* or *McGugan.  See Clark v. Me. Med. Ctr.*, 559 A.2d 358, 360 (Me. 1989) (finding

that a private physician employed by a private facility acted in an "official capacity on behalf of

the State" under the Main Tort Claims Act in determining that the plaintiff should be

involuntarily committed to a state facility).  Involuntary commitment under MHL § 9.27 requires

action by four separate individuals—one of a number of designated individuals to make an

application for admission, *see* N.Y. Mental Hygiene Law § 9.27(a)-(b), two examining

physicians to sign certificates (in this case, Dr. Mankowitz and Dr. Cartmill), *see id.* § 9.27(a),

and a third physician at the receiving facility to confirm the findings of the certifying physicians,

*see id.* § 9.27(e).  *See Project Release v. Prevost*, 722 F.2d 960, 967 (2d Cir. 1983); *June v.

Blair*, No. 9:09-CV-323 FJS/TWD, 2012 WL 1048463, at *1 (N.D.N.Y. Mar. 28, 2012).  In

other words, the Good Samaritan Defendants, Dr. Mankowitz, and Dr. Cartmill could not have

committed Plaintiff to Summit Park Hospital against his will absent joint action with at least one

physician affiliated with Summit Park Hospital.  Moreover, Plaintiff alleges that Summit Park

Hospital "outsourced" its commitment decisions to Good Samaritan Hospital.  Depending on its

terms, this type of contractual relationship, if proven, could establish that Good Samaritan

Hospital and its employees acted on behalf of the state or were agents of the state.  *See West v.*

*Atkins*, 487 U.S. 42, 56 (1988) (holding that a private physician acted under color of law by

providing medical services to prison inmates under a contract with the state).  Given the

procedural posture of this motion and in light of the Court's obligation to liberally construe the

Complaint, the Court cannot dismiss on the basis of state action.  *See Meadows*, 2011 WL

864832, at *5 (holding that an evaluation of state action under the close nexus/joint action test in

that case would benefit from a developed factual record and would be better treated on summary

judgment).

     *Blum v. Yaretsky* does not compel a different conclusion.  457 U.S. 991 (1982).  In *Blum*,

the Supreme Court ruled that physicians at a private nursing home did not engage in state action

by discharging patients or transferring them to a lower level of care, notwithstanding the fact that

such decisions had the effect of decreasing the patients' Medicaid benefits.  *Id.* at 1004.  The

Court reasoned that the decisions were "medical judgments made by private parties according to

professional standards that are not established by the State," and that the state was merely

"respond[ing]" to those judgments by adjusting Medicaid benefits.  *Id.* at 1004, 1008.  Here,

even if Dr. Mankowitz's and Dr. Cartmill's evaluations were their own judgments based on

professional medical standards, the state has not merely responded to their evaluations; rather,

the doctors' actions—together with the actions of state employees—effected Plaintiff's

commitment to a state facility, which could not have been accomplished absent the state agents'

participation.

## 2.    *Constitutional Deprivation*

The Court rejects Dr. Cartmill and Dr. Mankowitz's arguments that Plaintiff's § 1983 claims fail because Plaintiff suffered no constitutional deprivation.  Their briefs, which are roughly identical on this point, merely make the naked assertion that both doctors examined Plaintiff in the emergency room.  As an initial matter, Plaintiff alleges that Dr. Mankowitz did not examine Plaintiff—a fact that this Court must accept as true on a motion for judgment on the pleadings.  And as to Dr. Cartmill, Plaintiff alleges that the evaluation lasted "less than a minute" and that Dr. Cartmill determined Plaintiff's condition was "mild" and that he "did not hurt anyone and does not contemplate hurting anyone."  According to Plaintiff, Dr. Cartmill determined that Plaintiff should be committed solely because Plaintiff had previously been diagnosed with bipolar disorder—a condition that Plaintiff alleges was so mild that he had not been prescribed medication for 13 years.  Taken as true these allegations raise a question whether Dr. Cartmill's criteria fell "substantially below" generally accepted medical standards.  Dr. Cartmill makes no effort at all in his brief to defend his evaluation in terms of the applicable case law.  Accordingly, his motion will not be granted on the merits.  Both doctors' arguments as to qualified immunity are vulnerable to the same criticism.  Their briefs are conspicuously devoid of any explanation beyond the bald assertion that their actions were "reasonable."[3]

The Court must also reject Good Samaritan Hospital's argument that Dr. Cartmill and Dr. Mankowitz are not its employees.  Because this is a motion for judgment on the pleadings, the Court may not consider the affidavits offered to support this proposition unless (1) they are judicially noticeable or (2) the Court treats the instant motion as one for summary judgment

---

[3] The Court notes for clarity that these conclusions are not inconsistent with its dismissal of Plaintiff's disability discrimination claims.  A medical evaluation may be "negligent" or fall "substantially below" accepted medical standards without being "irrational" or "unrelated to, and thus improper to consideration of, the services in question."  *Univ. Hosp.*, 729 F.2d at 156; *McGugan*, 752 F.3d at 234.

14

under Fed. R. Civ. P. 12(d).  First, the Court sees no basis to judicially notice these affidavits,

and Defendants have offered none.  Second, the Rule 12(d) procedure is a "hazardous one that

warrants special caution."  *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992).  A court

has "complete discretion" to decide whether to convert a 12(c) motion to one for summary

judgment.  *Abbey v. 3F Therapeutics, Inc.*, 06 Civ. 409(KMW), 2009 WL 4333819, at *5

(S.D.N.Y. Dec. 2, 2009); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60-61 (2d

Cir. 1998) (applying abuse of discretion standard of review).  Courts have declined to convert

where, for example, discovery is incomplete and neither party has explicitly requested summary

judgment in the alternative.  *See Key Items, Inc. v. Ultima Diamonds, Inc.*, No. 09 CIV 3729

HBP, 2010 WL 3291582, at *5 (S.D.N.Y. Aug. 17, 2010); *see also E.E.O.C. v. Care Ctrs. Mgmt.

Consulting, Inc.*, 942 F. Supp. 2d 771 (E.D. Tenn. 2013); *cf. Nat'l Ass'n of Pharm. Mfrs. v.

Ayerst Lab.*, 850 F.2d 904, 911 (2d Cir. 1988).

　　　Defendants have not explicitly requested summary judgment in the alternative, and

although discovery has begun, it was stayed on September 9, 2014 pending this decision.  (*See*

ECF No. 64.)  Also, the material that Defendants have offered would not necessarily dispose of

the action.  For example, even if Good Samaritan Hospital were dismissed from the case on the

basis of the proffered materials, certain claims against other defendants, including its employees,

would survive.[4]  Accordingly, the Court declines to treat the instant motions as ones for

summary judgment and shall not consider materials outside of the pleadings.  The Court must

---

[4] The Court also notes that the Good Samaritan Defendants have submitted Plaintiff's medical records from his visit to Good Samaritan Hospital.  It is certainly possible that these records will dispose of Plaintiff's federal claims in this case.  Indeed, Defendants have submitted affidavits from fact affiants noting, "Counsel advises that a copy of the GOOD SAMARITAN HOSPITAL chart is available for review confidentially to the Court for full medical description of evaluation of [*sic*] treatment and transfer of this patient, JAMES RHEE."  (*E.g.*, Holmes Decl. Ex. F. ¶ 4, ECF No. 41-9.)  But, curiously, none of Defendants' briefs make reference to any specific portion of these records at all.  If Defendants have arguments to make based on these records, they should have done so in their briefs.  The Court will not scour lengthy medical records to construct arguments on Defendants' behalf.

accept as true the well-pleaded allegations in the Complaint, and the Complaint unambiguously alleges that Dr. Mankowitz and Dr. Cartmill are Good Samaritan Hospital employees.  (Compl. 3.)

The Good Samaritan Defendants' deprivation-based arguments concerning Jane Does 1 and 2 also turn on facts outside of the pleadings.  Accordingly, the Court cannot accept those arguments.  Plaintiff alleges that the examination backing one of the physicians' certificates required by MHL § 9.27 was performed by a social worker—Jane Doe 2—who relied entirely on hearsay.  Accordingly, the Court cannot accept the Good Samaritan Defendants' assertion that the MHL was fully complied with or that, as a matter of law, Plaintiff's examination did not fall "substantially below" accepted medical standards.  Plaintiff has alleged sufficient personal involvement on the part of Jane Doe 2.  However, all allegations with respect to Jane Doe 1 are either conclusory or nonsensical.  Accordingly, all claims against Jane Doe 1 are dismissed.

## CONCLUSION

The Good Samaritan Defendants' motion is GRANTED in part and DENIED in part in accordance with this opinion.  Dr. Mankowitz's motion is GRANTED in part and DENIED in part in accordance with this opinion.  Dr. Cartmill's motion is GRANTED in part and DENIED in part in accordance with this opinion.  The Rockland County Defendants' motion is GRANTED in its entirety.  All claims are dismissed except for Plaintiff's medical malpractice and § 1983 claims, which survive to the extent that they are asserted against Dr. Mankowitz, Dr. Cartmill, Good Samaritan Hospital, and Jane Doe 2.  This dismissal is without prejudice, except

as to the state-law claims against the Rockland County Defendants, which are dismissed with prejudice for failure to comply with notice-of-claim requirements.

It is further ORDERED that the stay of discovery entered pursuant to Magistrate Judge Lisa Margaret Smith's September 9, 2014 Order (*see* ECF No. 64) is lifted. The remaining Defendants are directed to notify Judge Smith of this Order, and the parties are directed to agree to a revised discovery schedule and furnish same to Judge Smith within seven (7) days of the date of this Order.

The Court respectfully directs the Clerk to (1) terminate the motions at ECF Nos. 42, 50, 59, and 91; (2) terminate Summit Park Hospital, Dr. Kouyoumdjian, Ms. Gates, Dr. Yoon, and Jane Doe 1 as parties; and (3) amend the caption to reflect their removal from the case.

Dated:   March 10 2015
         White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge